UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 26-45-DLB

DALILA DORIBEL MARROQUIN                                          PETITIONER

v.                     **MEMORANDUM ORDER AND OPINION**

KRISTI NOEM, et al.                                              RESPONDENTS

\* \* \* \* \* \* \* \* \* \*

## I.   INTRODUCTION

This matter is before the Court on Petitioner Dalila Doribel Marroquin's Petition for Writ of Habeas Corpus (Doc. # 1). Respondents[1] having filed their Response (Doc. # 6), and Petitioner having filed a Reply (Doc. # 7), this matter is now ripe for review. For the following reasons, the Court will **deny** the Petition.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Dalila Doribel Marroquin is a Guatemalan citizen who entered the United States without inspection more than twenty years ago. (Doc. # 1 ¶ 16). Marroquin has remained in the United States continuously since this initial entry. (*Id.*). Prior to her present detention, Marroquin resided in Corydon, Indiana with her three sons, each of whom is a U.S. citizen. (*Id.* ¶ 24). In late 2025, Marroquin was cited and charged in Indiana for operating a motor vehicle without a license. (*Id.* ¶ 28). Around this time, she

---

[1] Petitioner files this action against Samuel Olson, Field Office Director of Enforcement and Removal Operations ("ERO"), Chicago Field Office, Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security ("DHS"), Kristi Noem, Secretary of DHS, Pamela Bondi, United States Attorney General, and James A. Daley, Jailer, Campbell County Detention Center, in their official capacities, respectively (collectively, "Respondents").

was cited in Indiana and Kentucky for additional driver's license-related offenses.  (*Id.*).  Shortly thereafter, ICE detained Marroquin and transferred her to the Campbell County Detention Center in Newport, Kentucky where she remains.  (*Id.*).

After her arrest, DHS served Marroquin with a Notice to Appear for removal proceedings pursuant to the Immigration and Nationality Act ("INA").  (*See* Doc. # 4-2).  Marroquin is represented by counsel in these removal proceedings, and she is not subject to a final removal order.  (Doc. # 1 ¶¶ 29-30).  Shortly after her initial detention, Marroquin requested and received a bond redetermination hearing before an Immigration Judge ("IJ").  (*Id.* ¶ 31; Doc. # 4-1 at 3).  In support of her request for bond, Marroquin offered "extensive evidence, including the real estate contract for the family home, the children's birth certificates, the youngest child's IEP and education records, a detailed letter from her oldest son describing her character and their dependence on her, and her recent tax returns and employment records." (*Id.*).  Marroquin argued that she did not pose a danger to the community and that she did not present a flight risk.  (*Id.* ¶ 32).  However, after considering this evidence, the IJ denied Marroquin's request for bond.  (Doc. # 4-1 at 3).  The IJ initially stated that he lacked authority to hear a bond request in light of the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  But the IJ alternatively concluded that, "[s]hould a reviewing body find that [the IJ] has authority to hear this bond, the Court finds that [Marroquin] is a danger and, in the alternative, a flight risk." (*Id.*).  Marroquin opted not to appeal the IJ's decision.  (*Id.* at 4; Doc. # 7 at 4).

Instead, on February 4, 2026, Marroquin filed the instant Petition for Writ of Habeas Corpus.  (Doc. # 1).  In her Petition, Marroquin argues that she is being wrongfully

2

detained at the Campbell County Detention Center and requests that the Court order her immediate release or, alternatively, a bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a). (*Id.* ¶ 7). On February 6, 2026, the Court directed Respondents to respond to the Petition. (Doc. # 3). Respondents having filed their Response (Doc. # 6) and Petitioner having filed her Reply (Doc. # 7), this matter is now ripe for the Court's review.

### III.    ANALYSIS

Marroquin's Petition alleges that her present detention violates the INA and deprives her of the rights afforded her by the Due Process Clause of the Fifth Amendment. (Doc. # 1 ¶ 6).

#### A.    The Writ of Habeas Corpus

At its core, the writ of habeas corpus provides "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And this relief is available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A district court may grant a writ of habeas corpus to any person who shows that she is detained within the Court's jurisdiction in violation of the Constitution or the laws and treaties of the United States. 28 U.S.C. § 2241(c)(3). In making such a showing, "the petitioner 'has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *Romaine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

**B.    Jurisdiction**

The Court has previously found that aliens who, like Marroquin, entered the United States without inspection and remained present for years prior to an arrest by ICE are subject to the discretionary detention scheme established by 8 U.S.C. § 1226 and not the mandatory detention required by 8 U.S.C. § 1225(b)(2).  *See, e.g.*, *Moyao Roman v. Olson*, No. 25-cv-169-DLB-CJS, 2025 WL 3268403, at *1 (E.D. Ky. Nov. 24, 2025); *Pacheco-Acosta v. Olson*, No. 25-cv-186-DLB, 2025 WL 3542128, at *1 (E.D. Ky. Dec. 10, 2025); *Lopez-Ramos v. Olson*, No. 26-cv-8-DLB, 2026 WL 372887, at *1 (E.D. Ky. Feb. 10, 2026).  For the reasons set forth in those decisions, the Court likewise finds that Marroquin is subject to the discretionary detention provisions of 8 U.S.C. § 1226.

But Marroquin's detention differs in a crucial respect—she has already received a bond hearing.  (Doc. # 4-1).  Marroquin acknowledges this fact.  (Doc. # 1 ¶ 4).  Nevertheless, she claims that the IJ's decision "misapplied [8 U.S.C. § 1226(a)]" and "effectively treat[ed] Ms. Marroquin as if she were subject to mandatory detention." (*Id.* ¶ 5).  Specifically, Marroquin alleges that the IJ improperly weighed the evidence and wrongly concluded that Marroquin posed a flight risk or danger to the community.  (*Id.*; Doc. # 7 at 2).  Respondents answer that, even if Marroquin was entitled to a bond hearing under § 1226, the Court lacks jurisdiction to review the IJ's bond decision.  (Doc. # 6 at 3).  The Court agrees.

Jurisdiction poses a threshold question.  *See Florida v. Thomas*, 532 U.S. 774, 777 (2001) ("we must first consider whether we have jurisdiction to decide this case").  "'Federal courts,' it bears repeating, 'are courts of limited jurisdiction.'" *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co.*

4

*of Am.*, 511 U.S. 375, 377 (1994)).  Thus, "[w]ithin constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007).  At the outset, the Court must determine whether it has jurisdiction to consider Marroquin's claims.

Respondents' jurisdictional argument centers on 8 U.S.C. § 1226(e).[2]  That statute provides that

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).  Accordingly, "district courts do not have jurisdiction to review discretionary decisions made by an IJ regarding bond." *Fuentes v. Lyons*, No. 5:25-cv-153, 2025 WL 3022478, at *3 (S.D. Tx. Oct. 29, 2025) (citing *Nielsen v. Preap*, 586 U.S. 392, 401 (2019)).  Still, the Supreme Court has emphasized that "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases.  It does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen*, 586 U.S. at 401 (quoting *Jennings v. Rodriguez*, 583 U.S. 295-96 (2018)).  So, where a petitioner challenges a particular discretionary "action" taken by an IJ—as opposed to the statutory framework as a whole—§ 1226(e) precludes the federal courts' review.  *Jennings*, 583 U.S. at 296; *see also Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d. Cir. 2018) ("Because

---

[2] In her Reply, Marroquin does not dispute Respondents' argument that § 1226(e) divests this Court of jurisdiction.  (*See* Doc. # 7 at 3-5).  Although she argues correctly that 28 U.S.C. § 2241 authorizes challenges to pre-removal immigration detention in certain circumstances, Marroquin does not address Respondents' argument that 8 U.S.C. § 1226(e) specifically precludes review where an IJ has already made a bond determination pursuant to the INA.  (*Id.* at 3).

5

[the petitioner] does not challenge a particular action or decision, but rather 'the statutory framework that permits his detention without bail,' § 1226(e) does not deprive the District Court or this Court of jurisdiction[.]" (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003) (cleaned up)). Thus, the Court may only consider Marroquin's Petition insofar as it challenges the extent of the Government's detention authority under the INA's framework. *See Nielsen*, 586 U.S. at 401.

Marroquin's Petition does not challenge the Government's authority to deny bond under § 1226(a). Indeed, she recognizes that "[d]etention under [§ 1226(a)] is discretionary, not mandatory." (Doc. # 1 ¶ 43). Rather, she argues that where an IJ "misapplies [§ 1226(a)]," disregards relevant factual considerations, or "effectively treats a noncitizen as subject to mandatory detention without any statutory basis," such discretionary detention becomes unconstitutional. (*Id.* ¶ 47). In her case, Marroquin contends that the IJ "did not faithfully apply [§ 1226(a)] or the standards articulated in Guerra[3] and Adeniji."[4] (*Id.* ¶ 60). Marroquin posits that *Guerra* and *Adeniji* require IJs to consider specific factors "including length of residence in the United States, family and community ties, employment history, criminal record, and the likelihood of success on relief" when making a bond determination under § 1226(a). (*Id.* ¶ 58). And Marroquin alleges that she offered "undisputed evidence of more than two decades of residence, home ownership, three U.S.-citizen children, strong community and church ties, a steady work and tax history, and a criminal record limited to non-violent traffic and driver's license offenses[.]" (*Id.* ¶ 4). Despite this evidence, the IJ declined to set bond, finding that Marroquin was "a danger and, in the alternative, a flight risk." (Doc. # 4-1 at 3). This

---

[3]   *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).
[4]   *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999).

6

decision, in Marroquin's view, "effectively converted [her] discretionary [§ 1226(a)] detention into de facto mandatory detention," in violation of the INA's text, BIA precedent, and the requirements of due process. (Doc. # 1 ¶ 34).

To be specific, Marroquin asserts that the IJ's decision effectively subjected her to mandatory detention because it "failed to give meaningful weight" to Marroquin's equities while placing too much emphasis on her relatively minor criminal history. (*Id.* ¶ 5). But Marroquin's own allegations belie this claim. Marroquin acknowledges that she requested and received a bond redetermination hearing under § 1226(a). (*Id.* ¶ 4; Doc. # 7 at 8). She appeared at this hearing with counsel and offered evidence of her continued residence, community ties, work history, and criminal record. (*Id.*). The IJ's decision states that he fully considered the evidence presented prior to reaching his decision. (Doc. # 4-1 at 3). Marroquin does not dispute this fact. She does not allege that the IJ wholly failed to consider the evidence she offered or that the hearing was procedurally improper. Instead, she argues that the IJ erred in weighing the evidence. (*See* Doc. # 1 ¶¶ 5, 33, 51, 52). Thus, her Petition raises quintessentially factual arguments about the IJ's decision. And factual challenges to an act of administrative discretion fall outside the bounds of the Court's jurisdiction. *See Nielsen*, 586 U.S. at 401 (noting that § 1226(e) bars review of discretionary applications of § 1226); *Hernandez-Gabriel v. Tate*, No. 25-cv-5687-H, 2026 WL 161192, at *4 (S.D. Tx. Jan. 20, 2026) (holding that a district court lacked jurisdiction to consider a petitioner's challenge to the correctness of an IJ's determination that the petitioner posed a flight risk); *Perez Sierra v. Bondi*, No. 25-cv-18829, 2026 WL 497070, at *3 (D.N.J. Feb. 23, 2026) ("This Court lacks jurisdiction to review any discretionary determinations underlying an immigration judge's bond decision,

7

but it can review whether the bond hearing was fundamentally unfair in violation of this Court's order."); *cf. Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *2 (W.D. Mich. Jan. 21, 2026) (holding that § 1226(e) did not bar consideration of a petitioner's challenge that the discretionary process of § 1226(a) itself is unconstitutional).

Although Marroquin, at times, couches her Petition in the language of a statutory or constitutional critique, her Petition ultimately takes issue with the IJ's discretionary decision to deny bond. For instance, Marroquin alleges that the IJ "failed to consider specific factors" as required by the BIA's decisions in *Matter of Guerra* and *Matter of Adeniji*. (Doc. # 1 ¶ 58). This "non-exclusive" list of factors includes an individual's "length of residence in the United States, family ties, employment history, community ties, criminal record . . . prior immigration history, and the likelihood that the respondent will appear for future proceedings." (*Id.* ¶ 44). But Marroquin also alleges that she offered evidence and argument addressing each of these factors. (*Id.* ¶¶ 31-32). And the IJ's decision was made "[a]fter full consideration of the evidence presented[.]" (Doc. # 4-1 at 3). Marroquin acknowledges as much in her Reply, stating that she "requested and received a bond hearing" before an IJ "*who applied the BIA's § 1226 precedents, including* Matter of Guerra *and* Matter of Adeniji." (Doc. # 7 at 8 (cleaned up) (emphasis added)). Elsewhere in her Petition, Marroquin alleges not that the IJ failed to consider certain factors but that he failed to properly "weigh" the evidence. (*See, e.g.,* Doc. # 1 ¶ 51 ("In denying bond, the Immigration Judge did not properly weigh Petitioner's strong equities under Matter of Guerra[.]")). She specifically takes issue with the IJ's purportedly excessive reliance on her criminal record in reaching his determination that Marroquin poses a danger or flight risk. (*Id.* ¶¶ 52, 59-60). These allegations contradict Marroquin's

8

claim that the IJ's decision "disregard[ed] the statutory framework and effectively convert[ed § 1226(a)] into mandatory detention in Petitioner's case[.]" (*Id.* ¶ 53). On the contrary, Marroquin's Petition indicates that the IJ adhered to the procedures laid out in § 1226(a) and made a bond determination based on the evidence presented.

Accordingly, Marroquin's Petition does not challenge the INA's statutory framework or the extent of the Government's detention authority. *See Nielsen*, 586 U.S. at 401. She does not claim that her bond hearing lacked necessary procedural safeguards or that the IJ did not have statutory authority to deny bond. Instead, she merely argues that the IJ came to the wrong conclusion after reviewing the evidence. (Doc. # 1 ¶¶ 50-51, 59-60). The Supreme Court has repeatedly recognized that § 1226(e) bars judicial review of such decisions. *See Nielsen*, 586 U.S. at 401; *Jennings*, 583 U.S. at 295; *Demore*, 538 U.S. at 516; *see also Espinosa v. ICE Field Office Director*, No. 2:26-cv-34-JHC, 2026 WL 369799, at *1 (W.D. Wash. Feb. 10, 2026) (finding a lack of jurisdiction where the petitioner provided "only factual arguments as to why he should be released on bond"); *Bazurto v. Olson*, No. 1:26-cv-122-SEB-CSW, 2026 WL 285993, at *5 (S.D. Ind. Feb. 3, 2026) ("Section 1226(e) might preclude this Court's intervention if [petitioner] requested bond, an immigration judge considered his request on the merits and denied it, and he petitioned this Court for a different result.").

Because Marroquin challenges a discretionary application of § 1226(a) and fails to raise a cognizable challenge to the underlying statutory framework or the extent of the Government's detention authority, § 1226(e) precludes this Court's review.

IV. **CONCLUSION**

For the foregoing reasons, Marroquin's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED.**

This 2nd day of March, 2026.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-45 MOO re Habeas.docx